UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTOPHER BROWN,                               Case No. 3:22-CV-105 (OAW)
    *Plaintiff*,

v.

HANNAH,
    *Defendant*.                                       February 17, 2022

## INIITAL REVIEW ORDER

Pro se plaintiff, Christopher Brown, currently incarcerated at Cheshire Correctional Institution, has filed a complaint pursuant 42 U.S.C. § 1983 and 42 U.S.C. § 12101 against the warden at Garner Correctional Institution ("Garner"). Plaintiff contends that Defendant caused him to be subjected to unsafe conditions which resulted in a head injury. Plaintiff seeks damages and declaratory relief from Defendant her individual capacity.

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678.  This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

With respect to pro se litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: a

pro se complaint still must "'state a claim to relief that is plausible on its fact.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pleaded. *Id*.

## II.     BACKGROUND

Plaintiff alleges the following facts. During the incidents underlying the complaint, Plaintiff was confined at Garner. Plaintiff has been diagnosed with several mental disorders including post-traumatic stress disorder, borderline personality disorder, and anti-social personality disorder. Complaint at ¶ 6, ECF No. 1 ("Complaint").

On March 9, 2021, Plaintiff was housed in cell 127 at Garner. *Id.* ¶ 8. The showers were located on the tier above his cell, and to the side. *Id.* Because of the pandemic, inmates were confined in their cells for 23.5 hours per day, and approximately 90% of the inmates in the unit took showers during the half-hour of out-of-cell time. *Id.* The third shower stall flooded regularly causing water to enter Plaintiff's cell through cracks in the ceiling and leave puddles on the cell floor. *Id.* ¶ 9.

Prison rules require inmates to report any damage to the cell when they are first assigned to the cell and the block officer is required to enter the report in the logbook and seek a work order to correct the damage. *Id.* ¶ 10. Plaintiff reported the cracks and leak

to Correctional Officer Petrazza several months before the incident. *Id.* ¶ 10.[1] Officer Petrazza permitted Plaintiff to mop up the water and said she would enter it in the logbook and submit a work order. *Id.*

Several weeks after Plaintiff reported the leak, he slipped and nearly fell near the toilet because of another "major leak." *Id.* ¶ 11. Plaintiff informed Correctional Officer Franchesi who viewed the leak, made a log entry, submitted a work order, and permitted Plaintiff to mop up the water. *Id.* On January 7, 2021, when no action was taken to correct the issue, Plaintiff filed a grievance. *Id.* ¶¶ 12, 17.

Defendant responded to the grievance, stating that no work order was on file. *Id.* ¶ 13. Plaintiff views this response as "an attempt to escape the responsibilities of having to agree with a prisoner" and the cost of the necessary repairs. *Id.* The decision was upheld on appeal; the reviewer stated that Defendant's response was appropriate and appropriate steps were taken to address the issue. *Id.* ¶ 16.

On March 9, 2021, Plaintiff was resting in his cell with the lights off when he heard Lieutenant Majors approaching. *Id.* ¶ 20. Plaintiff got up to speak to him about the daily recreation schedule and slipped on a puddle of water near the door. *Id.* Plaintiff struck his right forehead on the door frame suffering a mild concussion and a knot on his forehead. *Id.* ¶ 21. Plaintiff was treated by Nurse Britton. *Id.* ¶ 22.

---

[1] This is the second paragraph numbered "10."

## III.     DISCUSSION

Plaintiff describes his claim as deliberate indifference to safety. *Id.* ¶ 26. In his introductory paragraph, however, Plaintiff also references 42 U.S.C. § 12101, the Americans with Disabilities Act ("ADA"). Accordingly, the court will consider whether Rogers states cognizable claims for deliberate indifference to safety in violation of the Eighth Amendment and violation of the ADA.

### A.   Deliberate Indifference to Safety/Conditions of Confinement

Plaintiff contends that Defendant subjected him to unconstitutional conditions of confinement in deliberate indifference to his safety. To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). To satisfy the subjective component of the deliberate indifference standard, Plaintiff must allege facts showing that Defendant knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm

5

exist[ed] and … dr[e]w that inference"). Negligent conduct does not meet this standard. *Farmer*, 511 U.S. at 835.

"While prison officials may not deny a prisoner the minimal civilized measure of life's necessities, 'lawsuits alleging garden-variety torts in the prison system that do not implicate basic human needs and constitutional rights are properly within the province of state courts, and are not cognizable under Section 1983.'" *Hamilton v. Westchester Cty.*, No. 18-CV-8361(NSR), 2020 WL 917214, at *9 (S.D.N.Y. Feb. 25, 2020) (quoting *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011)), *aff'd in part vacated in part & remanded on other grounds*, 3 F.4th 86 (2d Cir. 2021).

Plaintiff alleges that a crack in the ceiling in his cell permitted water to leak in and to puddle on the floor. Courts considering similar claims have held that water on the cell floor does not support a claim for unconstitutional conditions of confinement. *See, e.g., Farray v. Green*, No. 12-CV-4717(ARR)(LB), 2013 WL 5676315, at *3 (E.D.N.Y. Oct. 16, 2013) ("ceiling leaks causing a wet floor are not a 'sufficiently serious' risk to state a plausible constitutional claim"); *Simmons v. Schriro,* No. 09 Civ. 9598(WHP), 2010 WL 3238943, at *2 (S.D.N.Y. Aug. 16, 2010) (holding that slippery floor caused by leak does not pose substantial risk of serious harm); *Covington v. Westchester Cty. Dep't of Corr.*, No. 06 Civ. 5369(WHP), 2010 WL 572125, at *8 (S.D.N.Y. Jan. 25, 2010) (holding that a puddle on the floor of a prisoner's cell does not meet the objective component of the deliberate indifference standard). Plaintiff has submitted copies of photographs of the water on his cell floor. *See* Complaint at 15-17. Two of the photographs show water droplets on the floor, but not a large puddle. As courts have held that a wet floor caused

by a leak does not rise to the level of an Eighth Amendment violation, Plaintiff fails to establish the objective component of the deliberate indifference standard.

Plaintiff argues that, even if a work order had not been submitted, once she reviewed his grievance, Defendant should have submitted a work order or sent someone to investigate the issue. He also contends that, once alerted to the problem by his grievance, Defendant should have moved him to a different cell. Plaintiff's allegations do not meet the subjective component of the deliberate indifference standard. Courts considering similar claims have held that failure to repair a leak constitutes, at most, negligence. *See, e.g., Farray*, 2013 WL 5676315, at *3 ("allegations regarding defendants' awareness of, and failure to fix, the leaks after he complained to certain prison officials do not transform his otherwise insufficient pleading into a plausible constitutional claim"; "defendants' alleged awareness of the problem would give rise to an inference of negligence rather than the requisite 'deliberate indifference'"); *Simmons*, 2010 WL 3238943, at *3 (concluding that even if prison officials were "aware of leaking pipe for ten years, the failure to repair it, at best, gives rise to a claim of negligence") (citations omitted). Thus, even if the condition were assumed to be sufficiently serious, Plaintiff's claim is a negligence claim rather than a constitutional violation. Accordingly, the Eighth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, the only named defendant (Warden Hannah) is a supervisory official. The Second Circuit has clarified the standard to be applied to a claim of supervisory liability. *See Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit had identified five

categories of conduct that would establish liability of supervisors for the conduct of a subordinate in a section 1983 action, one of which was failure to act on information that unconstitutional acts were occurring.  *Id.* at 616.  In *Iqbal,* the Supreme Court rejected a theory of supervisory liability that permitted a supervisor to be "held liable based on a lesser showing of culpability than the constitutional violation requires."  *Id*. at 617 (quoting *Iqbal,* 556 U.S. at 677) (internal quotation marks omitted).  In *Tangreti*, the Second Circuit adopted this view and held that, "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. at 618 (quoting *Iqbal*, 556 U.S. at 676).  Thus, Plaintiff must plead and prove that Defendant personally was involved in the incidents underlying his claims.

Plaintiff alleges that Defendant was made aware of his concerns when she read and responded to his grievance.  However, mere awareness of an issue is not sufficient to state a claim for supervisory liability.  "A supervisor's 'mere knowledge …' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution."  *Tangreti*, 983 F.3d at 616-17 (quoting *Iqbal*, 556 U.S. at 677)); *see also Lopez v. Chappius*, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (determining that receipt of communication was insufficient to show personal involvement; "Even before *Tangreti*, it was 'well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged.'") (citations omitted). Although Defendant did not take the remedial action for which Plaintiff advocated, she did not ignore Plaintiff's grievance.

8

Defendant responded that there was no record of a work order and directed Plaintiff to contact his unit manager.  See Complaint at 10.  Although Plaintiff is skeptical of the response, he has identified no action taken by Defendant to support a claim for supervisory liability.

    B.  ADA

Plaintiff references the ADA in his introductory paragraph.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  To state a cognizable ADA claim, Plaintiff must establish three factors: (1) that he is a qualified person with a disability, (2) that Defendant, in her individual or official capacity, is considered an entity subject to the ADA, and (3) that he was denied the opportunity to participate in or to benefit from an institutional program, service, or activity, or that he otherwise was discriminated against because of his disabilities.  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Plaintiff states that he suffers from several mental disorders.  For purposes of this order only, the court assumes that Plaintiff is a qualified person with a disability.  The ADA applies to state prisons.  See *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (`998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage").

However, Plaintiff may not assert an ADA claim against a state official in her individual capacity.  See *Schlosser v. Elzea*, No. 3:19-cv-1380(SRU), 2020 WL 887752,

at *4 (D. Conn. Feb. 24, 2020) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).  As Plaintiff has named Defendant in her individual capacity only, his claim is not cognizable.

Under certain circumstances, an inmate may bring a Title II ADA claim against a state official in her official capacity for damages or injunctive relief.  *See id.*  However, even if the court were to construe the complaint as asserted against Defendant in her official capacity, Plaintiff fails to satisfy the third requirement for an ADA claim.

Plaintiff has not identified any program, service, or activity he has been unable to participate in because of his disability.  He merely complains that water leaks into his cell creating a dangerous condition.  Plaintiff does not allege that the leak was not repaired because of his disability.  Thus, he fails to allege facts supporting an ADA claim.  Any ADA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## ORDERS

Plaintiff's Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  As the facts underlying the complaint do not support a constitutional violation, any amendment would be futile.  The Clerk is directed to enter judgment and to close this case.

SO ORDERED at Hartford, Connecticut, this   17th day of February 2022.

/s/ *Omar A. Williams*
Omar A. Williams
United States District Judge